UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
CHRISTOPHER LADAY,

           Plaintiff,

    -against-

RAMADA PLAZA HOTEL LAGUARDIA,
FEDERAL EMERGENCY MANAGEMENT
AGENCY, THE BIG APPLE LODGING,
NEW YORK CITY POLICE DEPARTMENT,
ST. VINCENT HOSPITAL, ST. LUKE'S
ROOSEVELT, CINGULAR, STATE OF
NEW YORK,

           Defendants.
----------------------------------------X

**MEMORANDUM AND ORDER**

07-CV-0450 (BMC)

COGAN, United States District Judge:

    Plaintiff Christopher LaDay, appearing *pro se*, filed this action on October 6, 2006[1] against defendants pursuant to the Robert T. Stafford Disaster Relief and Emergency Assistance Act (the "Stafford Act"), 42 U.S.C. §§ 5121, *et seq.*, and the Equal Protection Clause. The Court hereby grants plaintiff's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a).[2] For the reasons set forth below, the Court dismisses the complaint in part and directs plaintiff to file an amended complaint within thirty (30) days of the date of this Order.

---

[1] By order dated December 27, 2006, the Honorable Kimba M. Wood of the United States District Court for the Southern District of New York transferred the instant action to this Court as a substantial part of the alleged events giving rise to plaintiff's claims occurred in the Eastern District of New York. LaDay v. Ramada Plaza Hotel LaGuardia, et al., No. 06 Civ. 15469, slip op. at 2 (S.D.N.Y. Dec. 27, 2006).

[2] On his application to proceed *in forma pauperis*, plaintiff alleges that he is due $1,000,000 in lottery prize money from the "Belgium Sweepstakes International Programs." Based on the documents plaintiff attaches to his application to support this claim, it is clear that plaintiff was not a bona fide winner of the Belgian lottery but the potential victim of an internet fraud scheme. Otherwise, plaintiff's application satisfies the Court that he is unable to pay the $350 filing fee to proceed with this action.

## BACKGROUND

Plaintiff alleges that he came to New York in the wake of Hurricane Katrina and was "referred [t]o the Ramada Plaza Hotel from the [R]ed [C]ross as a Hurricane Katrina Victim." Compl. at 1. Plaintiff alleges that he received housing benefits from the Federal Emergency Management Agency ("FEMA"), but on February 14, 2006, he was "illegally evicted from [his] dwelling place" at the hotel. Id. Plaintiff states:

> "After being illegally evicted and living on the streets and in the [P]ort [A]uthority bus station, I became sick and still is[.] Something is in my body. I w[ent] to St. Vincent and Roosevelt hospital and was refuse[d] X-Rays (Treatment)."

Id. Plaintiff claims that he was discriminated against in violation of the Stafford Act, id., and because he alleges discrimination, the Court broadly construes his claim against FEMA as brought under the Equal Protection Clause as well. Nevertheless, in his three-page complaint, plaintiff does not state what his race is or whether he was discriminated against because of his membership in any particular group. The bulk of plaintiff's complaint consists of citations to federal laws that prohibit discrimination and protect civil liberties; however, it appears that plaintiff is not suing defendants under the cited laws, but reproduces them as examples of federal laws that reflect the anti-discrimination language of the Stafford Act. Plaintiff seeks reinstatement of housing benefits from FEMA. Id. at 3.

Plaintiff attaches numerous documents to his complaint, the bulk of which do not clarify his claims. However, several documents do contain additional allegations. In a document attached to his complaint titled "Motion to Quash Warrant," plaintiff alleges that on June 24, 2006, he was "seat[ed] on the public side[]walk asking people for money" and was ticketed for disorderly conduct by a police officer, whom plaintiff alleges "did not have Probable to stop me, cause I was not breaking any laws." Id., Ex. Plaintiff does not allege where this incident took

2

place. In another document attached to his complaint, plaintiff alleges that on August 4, 2006, he was sleeping on the street at Columbus Circle in Manhattan and woke up to discover that his bag had been stolen. Id., Ex. Plaintiff alleges that he called 911 and that a policeman who responded to his call told him that "nothing could be done about [it]." Id., Ex. Plaintiff argues that "they have Cameras watching over that Circle and could have seen the [thief]." Id., Ex. Plaintiff's last claim in an attached document alleges that the cellular phone operator Cingular overcharged him for cellular phone services and breached the terms of his service plan. Id., Ex. Plaintiff does not specify the relief he seeks for these additional claims.

## DISCUSSION

### A. Standard of Review

Under 28 U.S.C. § 1915(e)(2)(B), the Court has the authority to dismiss an *in forma pauperis* action where it is "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." An action is "frivolous" when either: (1) "the 'factual contentions are clearly baseless,' such as when allegations are the product of delusion or fantasy;" or (2) "the claim is 'based on an indisputably meritless legal theory.'" Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998) (internal citation omitted). In addition, as plaintiff is proceeding *pro se*, this Court is obliged to construe the pleadings liberally, particularly as they allege civil rights violations. McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004) (citing Weinstein v. Albright, 261 F.3d 127, 132 (2d Cir. 2001)). Thus, this Court must interpret plaintiff's pleadings as raising the strongest arguments they suggest. Id. Furthermore, the Second Circuit has held that "a *pro se* plaintiff who is proceeding *in forma pauperis* should be afforded the same opportunity as a *pro se* fee-paid plaintiff to amend his complaint prior to its dismissal for failure to state a claim,

3

unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." Cruz v. Gomez, 202 F.3d 593, 597-98 (2d Cir. 2000) (quoting Gomez v. USAA Federal Sav. Bank, 171 F.3d 794, 796 (2d Cir. 1999)).

**B.    The Stafford Act**

Plaintiff sues FEMA, a federal agency, under the Stafford Act. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994) (citing Loeffler v. Frank, 486 U.S. 549, 554 (1988) and Federal Hous. Admin. v. Burr, 309 U.S. 242, 244 (1940)); see United States v. Sherwood, 312 U.S. 584, 586 (1941); Morales v. United States, 38 F.3d 659, 660 (2d Cir. 1994). A waiver of sovereign immunity cannot be implied, but must be expressed explicitly by Congress. United States v. Nordic Village, Inc., 503 U.S. 30, 33-34 (1992). Such a waiver is a jurisdictional prerequisite to obtaining relief. United States v. Mitchell, 463 U.S. 206, 212 (1983).

The Stafford Act gives FEMA the authority to distribute funds to persons who have suffered damage in Presidentially-declared "major disaster" areas. See 42 U.S.C. § 5170. Section 308 of the Stafford Act, 42 U.S.C. § 5148, provides:

> The Federal Government shall not be liable for any claim based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of a Federal agency or any employee of the Federal Government in carrying out the provisions of this chapter.

Thus, the statute provides that FEMA is immune from judicial review of its acts that are discretionary in nature. See Sunrise Village Mobile Home Park, L.C. v. United States, 42 Fed. Cl. 392, 399-400 (1998). However, § 5151(a) of the Stafford Act also requires FEMA to implement programs in an equitable and impartial manner and proscribes discrimination in

4

disbursements. See 42 U.S.C. § 5151(a) (" ... regulations shall include provisions for insuring that the distribution of supplies, the processing of applications, and other relief and assistance activities shall be accomplished in an equitable and impartial manner, without discrimination on the grounds of race, color, religion, nationality, sex, age, or economic status."). Courts have found that this provision imposes an affirmative duty on FEMA to provide assistance without discrimination and provides an aggrieved individual with a right of action against FEMA. See Graham v. Fed. Emergency Mgmt. Agency, 149 F.3d 997, 1004-05 (9th Cir. 1998); McWaters v. Fed. Emergency Mgmt. Agency, 436 F. Supp. 2d 802, 824 (E.D. La. 2006). However, the litigant bears the burden of establishing that FEMA, in administering a disaster assistance program, has somehow impermissibly discriminated against an applicant. See Graham, 149 F.3d at 1001 n.1 ("Since the plaintiffs do not allege any facts that point to discriminatory actions on the part of FEMA, the plaintiffs' reliance on § 5151(a) is without merit."); McWaters, 436 F. Supp. 2d at 824 (dismissing plaintiffs' § 5151(a) claims for failure to allege a colorable claim of discrimination).

Plaintiff provides few particulars of the program through which he received housing benefits and apart from the broad allegation that he was discriminated against when he was evicted from his hotel, he fails to establish a discriminatory animus on the part of FEMA. Indeed, plaintiff's complaint fails to state whether he was discriminated against because of his "race, color, religion, nationality, sex, age, or economic status." See 42 U.S.C. § 5151(a). Accordingly, plaintiff fails to state a claim under § 5151(a). 28 U.S.C. § 1915(e)(2)(B)(ii), but is granted leave to replead as indicated below.

C.  **Equal Protection**

5

The Court construes plaintiff's remaining claims, including his Equal Protection claim, as brought under 42 U.S.C. § 1983, which governs violations by person action under color of state law and possibly under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 397 (1971), which governs violations by persons acting under color of federal law. Although courts typically incorporate § 1983 law into Bivens actions, Tavarez v. Reno, 54 F.3d 109, 110 (2d Cir. 1995),[3] there are some important differences between the two claims.

A § 1983 claim may not be brought against a person acting under federal law or, as discussed below, against the State of New York. Therefore, there is no claim under § 1983 as against FEMA or the State of New York and their respective agents in their official capacities. Furthermore, while a Bivens claim may be alleged against an individual acting under color of federal law, it may not be alleged against a federal agency such as FEMA. In order to bring a claim against a federal officer under Bivens, the officer must be sued in his or her individual capacity. Plaintiff has failed to identify or sue any individual federal officers who may be subject to a Bivens claim. Finally, as discussed below, private entities or individuals are generally not subject to suit either under § 1983 or Bivens.

1.  § 1983 Generally

In order to maintain an action pursuant to 42 U.S.C. § 1983, a plaintiff must allege two essential elements. First, "the conduct complained of must have been committed by a person acting under color of state law." Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994) (citing

---

[3] See aslo, generally, Butz v. Economou, 438 U.S. 478, 504 (1978) (no distinction for purposes of immunity law between Bivens and § 1983 claims); Polanco v. U.S. DEA, 158 F.3d 647, 653 (2d Cir. 1998) (same statute of limitation applies to Bivens and § 1983 claims).

6

Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds by Daniel v. Williams, 474 U.S. 327 (1986)). Second, "the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." Id. "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) (citing City of Oklahoma City v. Tuttle, 471 U.S. 808 (1985)). Furthermore, it is well settled in this Circuit that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Provost v. City of Newburgh, 262 F.3d 146, 154 (2d Cir. 2001) (citations omitted). A defendant's direct personal involvement may be established by demonstrating that the defendant directly participated in an event, learned of the egregious wrong and failed to correct it, created or allowed a policy to exist that harmed the plaintiff, or was grossly negligent in managing subordinates who caused the unlawful condition to exist. Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).

The Equal Protection Clause of the United States Constitution requires that all persons similarly situated be treated in the same manner. Nordlinger v. Hahn, 505 U.S. 1, 10 (1992) (the constitutional guarantee of equal protection "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike"); Harlen Assocs. v. Inc. Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001). In order to establish an Equal Protection violation, a plaintiff must "show both (1) that [he was] treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race ... ." Harlen Assocs., 273 F.3d at 499 (internal quotations and citations omitted). Conclusory allegations of selective treatment are insufficient to state a claim. See Albert v. Carovano, 851 F.2d 561 (2d Cir. 1988). Rather, a plaintiff "must allege purposeful and

7

systematic discrimination by specifying instances in which [the plaintiff] [was] singled ... out for unlawful oppression in contrast to others similarly situated." Id. at 573 (internal quotations omitted).

In any event, in addition to the deficiencies described below, the instant complaint fails to raise a colorable claim under the Equal Protection Clause as to any defendant, because plaintiff does not allege that he was treated differently from other similarly situated individuals or that he was discriminated against based on an impermissible consideration. See Harlen Assocs., 273 F.3d at 499. Accordingly, plaintiff's Equal Protection claims fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

### 2. State Immunity

Plaintiff's § 1983 claim against the State of New York must be dismissed on grounds of immunity. The Eleventh Amendment of the United States Constitution bars suits in a federal court by private parties against a state or one of its agencies, absent consent to such a suit or an express statutory waiver of immunity. Bd. of Trs. of Univ. of Alabama v. Garrett, 531 U.S. 356, 362 (2001); Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996). The State of New York State has not consented to suit in federal court. Trotman v. Palisades Interstate Park Comm'n, 557 F.2d 35, 38-40 (2d Cir. 1977). Accordingly, plaintiff's claim against this defendant is dismissed. 28 U.S.C. § 1915(e)(2)(B)(iii).

### 3. Municipal Policy

The New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the [C]ity of New York

and not in that of any agency, except where otherwise provided by law." N.Y.C. Charter, Ch. 17, § 396. To the extent plaintiff seeks to state a § 1983 claim against a municipal entity, such as the New York City Police Department (the "NYPD"), he must bring the action against the City of New York. See Lovanyak v. Cogdell, 955 F. Supp. 172, 174 (E.D.N.Y. 1996) (citing Bailey v. New York City Police Dep't, 910 F. Supp. 116, 117 (E.D.N.Y. 1996)). In order to sustain a claim for relief under 42 U.S.C. § 1983 against a municipal defendant, plaintiff must also show the existence of an officially adopted policy or custom that caused injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right. Bd. of County Comm'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 403 (1997) (citing Monell v. New York City Dep't of Social Servs., 436 U.S. 658 (1978)). Even when liberally construed, the present complaint cannot reasonably be interpreted as alleging facts sufficient to demonstrate that plaintiff suffered any damages as a result of any policy or custom of the City of New York. Accordingly, plaintiff's § 1983 claim against the NYPD is dismissed for failure to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

4. Private Defendants

Plaintiff's claims against Ramada Plaza Hotel LaGuardia, St. Vincent Hospital, St. Luke's-Roosevelt Hospital and Cingular must be dismissed as they are private defendants whose actions cannot be fairly attributable to the state. A claim for relief under § 1983 must allege facts showing that the defendant acted under color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. See Flagg Bros. Inc. v. Brooks, 436 U.S. 149, 155-57 (1978); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970). As the Supreme Court has held, "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no

matter how discriminatory or wrongful." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (quotations omitted).

As Ramada Plaza Hotel LaGuardia, St. Vincent Hospital, St. Luke's-Roosevelt Hospital and Cingular are private entities, plaintiff's claims against these defendants are dismissed for failure to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). Furthermore, plaintiff's claim against The Big Apple Lodging must be dismissed as his pleadings do not contain any allegations against this defendant, which is presumably a private entity as well. As such, plaintiff's complaint is dismissed as to The Big Apple Lodging for failure to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

## CONCLUSION

Accordingly, plaintiff's claims against the Ramada Plaza Hotel LaGuardia, The Big Apple Lodging, the NYPD, St. Vincent Hospital, St. Luke's-Roosevelt Hospital, Cingular and the State of New York are dismissed for failure to state a claim on which relief may be granted and on grounds of immunity. 28 U.S.C. §§ 1915(e)(2)(B)(ii)-(iii). No summons shall issue as to these defendants.

While plaintiff's complaint fails to state claim under the Stafford Act and the Equal Protection Clause against either FEMA or any individual federal officer, the Court, in an abundance of caution and in light of plaintiff's *pro se* status, affords plaintiff an opportunity to replead these two causes of action within thirty (30) days of the date of this Order. See Gomez, 171 F.3d at 795. As described above, in order for plaintiff to proceed with these claims, he must establish that FEMA, in administering a disaster assistance program, has somehow impermissibly

discriminated against him and that he was treated differently from other similarly situated individuals. Furthermore, with regard to his Equal Protection claim, he must identify the individual federal defendants who violated his constitutional rights when they allegedly discriminated him by canceling his housing benefits.

All further proceedings shall be stayed for thirty (30) days or until plaintiff has complied with this Order. If plaintiff fails to replead within the time allotted, his complaint shall be dismissed in its entirety. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**The Clerk of the Court is directed to mail a copy of this Order to plaintiff *pro se*.**

**SO ORDERED.**

S/Brian M. Cogan, USDJ

U.S.D.J.

Dated: Brooklyn, New York
February 8, 2007